UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. |
| v. | ) ) | 20-11217-FDS |
| REGENERON PHARMACEUTICALS, INC., | ) ) ) ) | |
| Defendant. | ) ) | |

**ORDER ON THE GOVERNMENT'S MOTION FOR LEAVE TO FILE
A SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT
AND TO REOPEN DISCOVERY ON A LIMITED BASIS**

SAYLOR, J.

This is a case alleging violations of the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b, and False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, by a pharmaceutical company. The United States has brought suit against Regeneron Pharmaceuticals, Inc., the manufacturer of a drug named Eylea, alleging that Regeneron improperly funneled millions of dollars to the Chronic Disease Fund ("CDF")—a purportedly independent charitable foundation—to subsidize patient copays for Eylea.

According to the government, the purpose of the payments was to induce physicians to increase prescriptions of the drug at the expense of the Medicare Part B program. Among other things, the government asserts that the contributions to the foundation were not motivated by a charitable purpose; instead, Regeneron employees solicited and received Eylea-specific data from CDF and improperly used that data to determine the specific amounts Regeneron would contribute, and their purpose in doing so, according to the government, was to increase sales of

Eylea.  The amended complaint alleges that Regeneron's actions violated the AKS and caused the submission of false claims for payment to Medicare.

For its part, Regeneron contends that it donated to a *bona fide*, independent charity in a manner that complied with the government's own regulatory guidance.  It further asserts that its donations did not result in or cause any false claims because it was not the only donor for a significant portion of the relevant period; CDF awarded assistance on a first-come, first-served basis without regard to whether patients used Eylea or another FDA-approved treatment; CDF had sufficient funds to cover all copay support provided to Eylea patients in 2013 and 2014 without any donations from Regeneron in each respective year; and a majority of Eylea patients in 2013 were allocated funds from CDF before Regeneron made a single donation.

Following the First Circuit's decision on an interlocutory appeal, the government has moved for leave to file a second motion for partial summary judgment on the issues of falsity, materiality, and causation under a "false certification" theory of FCA violation.  The government has also requested that discovery be reopened on a limited basis to allow it to produce evidence related to those issues.  For the following reasons, the government's motions will be granted.

## I. Background

### A. Statutory Framework

The False Claims Act, 31 U.S.C. §§ 3729-33, imposes civil liability for anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A), (a)(1)(B).  A "claim" is "any request or demand . . . for money or property" presented to an officer, employee, or agent of the United States.  31 U.S.C. § 3729(b)(2).

The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, states that "[w]hoever knowingly and

willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person . . . to purchase . . . or recommend purchasing . . . any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program" shall be guilty of a felony.  42 U.S.C. § 1320a-7b(b)(2).

In 2010, Congress amended the AKS to provide that any Medicare claim "that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for purposes of [the FCA]."  42 U.S.C. § 1320a-7b(g); Patient Protection and Affordable Care Act, Pub. L. 111-148, 124 Stat. 119 (2010).  In other words, an "AKS violation that results in a federal health care payment is a per se false claim under the FCA."  *Guilfoile v. Shields*, 913 F.3d 178, 190 (1st Cir. 2019) (quoting *United States ex rel. Lutz v. United States*, 853 F.3d 131, 135 (4th Cir. 2017)).

Two theories of FCA liability based on violation of the AKS emerge from the foregoing framework:  the "false certification" theory and the "2010 amendment" theory.  "[U]nder the false-certification theory, FCA liability lies when a defendant falsely represents AKS compliance on a federal agency form."  *United States v. Regeneron Pharms., Inc.*, 128 F.4th 324, 334 (1st Cir. 2025).  Under that theory, the government must also "show that the defendant's misrepresentation of AKS compliance was material to the government's payment decision."  *Id.* On the other hand, "the 2010 amendment does not require any representation—implied or express—of AKS compliance."  *Id.*  Instead, under the 2010 amendment, it is "the AKS violation itself that renders the claim false."  *Id.* at 333.  However, under that theory—in contrast to false certification—"the government must prove that the AKS violation was the but-for cause of the false claim" submitted to the government.  *Id.* at 328.  That is, "if the government can show that

3

the illicit kickback was a but-for cause of the submitted claim, then the claim is 'per se false' [under the 2010 amendment to the AKS] even absent a false certification of AKS compliance." *Id.* at 335.

### B. Procedural Background

In its December 4, 2020 ruling on defendant's motion to dismiss, following reasoning from the Third Circuit in *United States ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 96 (3d Cir. 2018), this Court held that the 2010 amendment did *not* require "'proof that the underlying medical care would not have been provided but for a kickback.'" (ECF No. 32 at 22-23 (quoting *Greenfield*, 880 F.3d at 96)).

In 2023, the parties filed cross-motions for summary judgment. In the time between the Court's ruling on defendant's motion to dismiss and the parties' filing of motions for summary judgment, the Sixth and Eighth Circuits issued opinions addressing the meaning of the term "resulting from a violation" in the 2010 amendment. Informed by that recent precedent, the Court reconsidered its prior holding on causation under the 2010 amendment and held that, indeed, the government must prove that the underlying AKS violation was a but-for cause of the false claim.

In October 2023, the Court certified for interlocutory appeal that portion of its order that addressed the causation standard applicable to claims for violation of the AKS and FCA under the 2010 amendment to the AKS.

On February 18, 2025, the First Circuit issued its opinion on the matter, "affirm[ing] the [Court's] ruling that to treat an AKS violation as a false or fraudulent claim under the FCA, the government must prove that the AKS violation was a but-for cause of the false claim." *Regeneron*, 128 F.4th at 328. The First Circuit issued its mandate on April 14, 2025.

The government has now moved for leave to file a second motion for partial summary

4

judgment as to the elements of falsity, materiality, and causation under a false-certification theory. It has also moved to reopen discovery on a limited basis so that it may produce evidence as to those elements of the claim.

## II.    Analysis

"[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016). Thus, without any limit in Fed. R. Civ. P. 56 on the number of motions for summary judgment that may be filed, it is within the Court's discretion to grant or deny leave to file a second motion for partial summary judgment. And it is not an abuse of that discretion to allow successive motions for summary judgment where those motions "reflect[] material changes in the posture of th[e] litigation and [are] grounded on meritorious contentions." *F.D.I.C. v. Kooyomjian*, 220 F.3d 10, 16 (1st Cir. 2000).

The government contends that the Court's reconsideration of the standard of causation under the 2010 amendment, and the First Circuit's subsequent affirmation, reflect a material change in the litigation. That is, the government contends that it was justified in choosing to prosecute its case with a focus on the 2010-amendment theory in reliance on the Court's causation ruling at the motion-to-dismiss stage, and now that the applicable standard of causation has changed, it is entitled to proceed under a false-certification theory. It asserts that a second motion for summary judgment, and a limited reopening of discovery, "will streamline the scope of the issues to be presented at trial and inform subsequent briefing and decisions on the relevance of expert testimony." (Gov't Mot. at 7-8).

In opposition, defendant contends that (1) the government failed to adequately allege a false-certification theory in its complaint, (2) in any event, it waived a false-certification theory by failing to pursue it, and (3) the government's proposal is unduly prejudicial to the defense.

Defendant further contends that even under the government's narrative, there is no basis to reopen discovery, given the ample opportunity the government has had to pursue relevant discovery.

The Court will address each of those issues in turn.

### A. Sufficiency of the Pleading

"A complaint must give the defendant fair notice of the claim asserted and the grounds upon which it rests." *W.R. Cobb Co. v. V.J. Designs, LLC*, 130 F.4th 224, 240 (1st Cir. 2025). The claims at issue here are for violation of the FCA on the basis of underlying violations of the AKS. While "claims under the 2010 amendment run on a separate track than do claims under a false-certification theory," *Regeneron*, 128 F.4th at 324, each theory is simply a pathway to proving falsity in an FCA claim based upon an underlying AKS violation, not an entirely separate claim in and of itself. The fact that "false certification" was never explicitly stated as a theory of liability in the complaint is of no moment—"it is factual allegations, not legal theories, that must be pleaded in a complaint." *Whitaker v. Milwaukee Cnty., Wisconsin*, 772 F.3d 802, 808 (7th Cir. 2014).[1]

Of course, it would be possible to formulate a complaint that contains allegations supporting a claim under one theory but not the other. For example, a complaint that did not contain an allegation of materiality or any allegations concerning certification of compliance with the AKS would not state a claim for FCA violation under a false-certification theory but might nevertheless state a claim for violation of the FCA under a 2010-amendment theory.

---

[1] *See* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1219 (4th ed.) ("The federal rules effectively abolished the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief."); *Fitzgerald v. Codex Corp.*, 882 F.2d 586, 589 (1st Cir. 1989) ("The 'theory of the pleadings' doctrine, under which a complaint must proceed upon some definite theory and plaintiff must succeed on that theory or not succeed at all, has been all but abolished under the federal rules.").

However, that is not the case here.

As stated in the Court's ruling on defendant's motion to dismiss, the complaint alleged violations of the FCA under the 2010 amendment with sufficient particularity to state a claim.[2] In substance, and assuming compliance with Fed. R. Civ. P. 9(b), the only additional factual allegations that would need to appear in the complaint to support a claim under the false-certification theory would be ones indicating (1) that claims were indeed submitted to the government containing either express or implied representations of compliance, (2) that those representations were false, and (3) that those representations were material to Medicare's payment decision.  The complaint identifies eleven claimants who allegedly received illegal copay subsidies from CDF and submitted Medicare claims for the remainder of the price of Eylea. (Compl. ¶ 101).  It alleges that in order to participate in Medicare Part B, providers must enter into agreements certifying that they "understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with . . . the [AKS]," and the complaint reproduces the exact language of that certification from CMS Form 855I.  (*Id.* ¶ 92).  Finally, the complaint contains a five-paragraph section alleging that compliance with the AKS is material to Medicare's payment decisions.  (*Id.* ¶¶ 93-97).  While the complaint does not contain allegations of express representations of compliance directly associated with each of the identified claims, courts recognize an implied false-certification theory that does not require such express representations.  Implied false certification occurs "when the defendant submits a claim for payment that makes specific representations about the goods or services provided, but knowingly fails to disclose the defendant's noncompliance with a statutory, regulatory, or

---

[2] The change in the standard for causation under the 2010 amendment does not impact the sufficiency of the pleadings to state a claim under a false-certification theory, because that particular standard does not apply to false certification.

contractual requirement." *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 181 (2016). According to the complaint, the providers submitted their claims along with "procedure codes" identifying that they were requesting reimbursement for the provision of Eylea. (Compl. ¶¶ 100-01). The submission of those codes plausibly amounts to specific representations about the goods or services provided. Therefore, even assuming the providers simply failed to disclose their noncompliance with the AKS, the complaint alleges sufficient facts to state a plausible claim for violation of the FCA under a false-certification theory.[3]

### B.  Waiver, Prejudice, and Discovery

Generally, "[p]laintiffs may not 'raise new and unadvertised theories of liability for the first time in opposition to a motion for summary judgment.'" *Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 76 (1st Cir. 2016) (quoting *Calvi v. Knox Cty.*, 470 F.3d 422, 431 (1st Cir. 2006)). The reasoning is that "[a]llowing a plaintiff to proceed on new, unple[aded] theories after the close of discovery would prejudice defendants, who would have focused their discovery efforts on the theories actually ple[aded]." *Id.* That is essentially the same reasoning that defendant contends should apply to the government's request to pursue a second motion for partial summary judgment on a false-certification theory. However, the procedural circumstances of the government's motion are different in at least two important ways.

First, the government is simultaneously seeking to reopen discovery on a limited basis to allow for the production of evidence uniquely applicable to a false-certification theory, and it is

---

[3] That is true even under the heightened pleading standard applicable to FCA claims. The complaint identifies eleven claimants who submitted claims after receiving allegedly illegal kickbacks (the who), the illegal kickbacks through CDF-funded copay subsidies, the certification of compliance by providers, and the submission of claims without disclosure of noncompliance (the what), defendant's coordination with CDF to ensure that Eylea prescriptions were adequately funded (the how), and the locations and dates of the Eylea injections that spurred Medicare claims (the when and where). *See U.S. ex rel. Duxbury v. Ortho Biotech Prod.*, L.P., 579 F.3d 13, 30 (1st Cir. 2009).

8

seeking leave to initiate a new round of complete briefing on that theory, not raising a new theory in the course of a summary judgment-process already in full swing. Thus, the prejudicial impact upon defendant in terms of its ability to mount a full defense is much more limited than if the government was seeking to rely on a previously unbriefed theory in opposition to a motion for summary judgment. Second, as established above, false certification is not an "unpleaded theory." The facts alleged in the complaint were sufficient to state a plausible claim under a false-certification theory, and defendant was thus on notice that such a theory was a potential pathway for proving the government's claim. Defendant did not test the sufficiency of that pathway in its motion to dismiss, and the government responded to the challenges raised by defendant. While it may have been more thorough practice on the part of the government to raise the false-certification theory as an alternative basis for liability, its failure to do so in opposition to a motion to dismiss that did not raise the issue is not a waiver of that theory.

Furthermore, the factual basis of the government's claim under the 2010 amendment will significantly overlap with that of a claim under a false-certification theory. Elaboration upon the details surrounding the actual submissions for reimbursement will likely be required, but the claim will still be fundamentally based upon the allegations laid out in the complaint.

Even so, "where a plaintiff has misled a defendant as to the nature of [its] claim in [its] responses to discovery or [its] arguments regarding pretrial motions," it would be unfair and prejudicial to allow that plaintiff to assert a new theory at the summary judgment stage. *Ghebreselassie v. Coleman Sec. Serv.*, 829 F.2d 892, 896 (9th Cir. 1987). However, there is no evidence that the government ever explicitly disclaimed a false-certification theory, or set forth arguments or facts inconsistent with such a theory. Instead, it chose to pursue the "most streamlined" path to liability, partially in reliance on the Court's statement of the law at the

9

motion-to-dismiss stage. Under ordinary circumstances, had the government sought to switch theories after the Court's ruling on summary judgment, its prior course of conduct may indeed have risen to the level of "misleading." Here, however, the Court's reconsideration of the causation standard under the 2010 amendment, and the First Circuit's subsequent confirmation of that change, amounted to a critical shift in the applicable law. That change undeniably made proving an FCA claim under the 2010 amendment more difficult. While, typically, a plaintiff must bear the risk that its choice of litigation strategy ultimately proves problematic, it would be unfair in these circumstances to chain the government to such a choice when the legal ground shifts somewhat dramatically mid-way through the litigation.

In addition, the risks alluded to in the cases cited by defendant are not applicable here. There is little risk that allowing a second motion for partial summary judgment here would turn the litigation "into a game of whack-a-mole, with seriatim summary judgment proceedings not ending until the defendant manages to guess every possible legal theory upon which a plaintiff might rely to support a claim." *Snyder v. Collura*, 812 F.3d 46, 51 (1st Cir. 2016). Here, the government is limited to two theories of potential liability, and the Court will not permit any others.

As to discovery, the government has requested a very limited reopening. It has represented, in fact, that it only seeks to reopen discovery so that it may *produce* evidence, and that it will do so within 30 days. Crediting that representation, defendant's argument that discovery should not be reopened because of the government's ample opportunity to *take* discovery loses some of its force. Of course, defendant may want to take additional discovery, and in the interest of fairness the Court may decide to reopen discovery to both parties, restricted to evidence directly relevant to the additional elements required to be proved under a false-

certification theory.

In sum, while this case is certainly long-pending, that is in large part due to the reevaluation of a core legal issue underlying the government's claims. And the Court finds that it is in the interest of justice to allow the government to adjust to that reevaluation and file a second motion for partial summary judgment to facilitate an orderly narrowing and clarification of issues prior to trial.

### III.    Conclusion

For the foregoing reasons, the motion of the United States for leave to file a second motion for partial summary judgment on the issues of falsity, materiality, and causation under a false-certification theory of FCA violation is GRANTED. The government's request for a limited reopening of discovery is also GRANTED. The government shall produce any additional discovery within 28 days of this order—that is by September 1, 2025—and the scope of any such discovery shall be limited to the elements of falsity, materiality, and causation under a false-certification theory of FCA violation. The government's second motion for partial summary judgment shall be filed within 30 days of the close of discovery—that is, by October 1, 2025—and defendant's opposition shall be filed within 30 days of that deadline—that is, by October 31, 2025.

**So Ordered.**

/s/  F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge

Dated: August 4, 2025